**FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

PETRI PAINT COMPANY, INC.,

        Plaintiff,

        v.

OMG AMERICAS, INC.,

        Defendant.

Civil Action No. 06-4879 (JAG)

**OPINION**

---

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion by Defendant[1], OMG Americas, Inc., ("OMG"), for summary judgment, pursuant to FED. R. CIV. P. 56(c), against Plaintiff, Petri Paint Company, Inc., ("Petri"). For the reasons set forth below, Defendant's motion is granted, in part, and denied, in part.

**I. FACTUAL BACKGROUND**

The following facts are undisputed unless otherwise noted.[2] Petri, a New Jersey corporation, manufactures various polyurethane products, paints, and varnishes, for sale to distributors and dealers. (Certification of Richard A. Reinartz ("Reinartz Cert."), Ex. B; Ex. C

---

[1] Superior Materials, Inc., was formerly a defendant party to this action. By stipulation dated September 5, 2007, Superior was dismissed from the lawsuit.

[2] The parties' statements of fact, drafted pursuant to L. CIV. R. 56.1(a), are set forth in Defendant's Moving Brief in Support of its Motion for Summary Judgment, and in Plaintiff's Brief in Opposition to Defendant's Motion ("Pl. Opp. Br."), respectively.

("L. Chernoff Dep."), at 16:8-20; Ex. D ("E. Chernoff Dep."), at 14:21-16:20, 17:23-19:1.) OMG, an Ohio corporation, is a commercial manufacturer and supplier of chemical products and raw materials. (Reinartz Cert., Ex. E.) OMG manufactures a chemical agent known as SKINO #2. (Id.) SKINO #2 may be used as an anti-skinning agent in connection with polyurethane manufacturing, and serves to prevent a topical skin from forming over a canned polyurethane end product. (Id.; L. Chernoff Dep., at 44:9-21, 68:21-25; E. Chernoff Dep., at 39:19-23.) Defendant contends that Petri has been an OMG customer since July 1, 1987. (Reinartz Cert., Ex. E.)

On or about September 14, 2004, Petri placed a verbal order for a 55-gallon drum of SKINO #2 with OMG sales agent Superior Materials, Inc. ("Superior"). (Reinartz Cert., Ex. F; L. Chernoff Dep., 37:16-18; E. Chernoff Dep., 34:10-23, 59:3-18.) Superior is a sales agent of OMG, pursuant to an agency agreement, and transmits orders and other offers to buy OMG products directly to OMG. (Reinartz Cert., Ex. E.)

In response to Petri's order, the following day OMG shipped to Petri, a 55-gallon drum of material labeled "SKINO #2." (Reinartz Cert., Ex. F.) The drum was mislabled, and did not contain SKINO #2, but rather contained a non-conforming calcium dryer product. (See Reinartz Cert., Ex. E; E. Chernoff Dep., at 31:2-7, 65:23-66:4; see also Plaintiff's Affidavit of Eugene Chernoff ("E. Chernoff Aff.")

On September 16, 2004, Petri received the product tender from OMG and remitted full payment, pursuant to OMG's invoice. (L. Chernoff Dep., at 66:7-67:13, 69:16-70:22; E. Chernoff Dep., 71:3-5; Reinartz Cert., Ex. E.) Petri subsequently introduced the non-conforming calcium dryer product to its polyurethane manufacturing process over the course of a three (3) month period. (L. Chernoff Dep., 82:9-85:8.) The product was then shipped to various dealers

and distributors, for ultimate purchase by flooring professionals. (E. Chernoff Aff.)

In February 2005, Petri began receiving complaints that the polyurethane product was forming a thick skin. (Certification of Hugh Lucariello, Ex. A, at pp. 83-89.) Petri sent the product to a chemist for analysis. (Id.) The chemist confirmed that the material thought to be SKINO #2, the anti-skinning agent, was not SKINO #2 after all. (Id.)

OMG contends that at no time did Petri attach any terms or conditions of purchase to the verbal purchase order. (Reinartz Cert., Ex. E.) Petri admits that it never expressed any conditions or requests when ordering SKINO #2 from OMG, but explains that it did not do so in reliance "on the 'warranty' and 'guarantee' that the chemical product shipped would perform as required." (Pl. Opp. Br., p. 6.) Plaintiff contends that OMG sent an invoice at a later date "stating that the 'material delivered to the Buyer will meet OMG specifications and standards' and ... in small print, 'Any stenciling, marking or numbering other than that contained on the preprinted OMG label shall not be relied upon ... ". (Id., p. 3 (citing E. Chernoff Aff.).) Plaintiff further contends that "[t]here is no known way to "test" the chemical product ... ". (Id.) Petri states that, as a result of its use of the mislabeled product, it has suffered "complete destruction of ...reputation among flooring professionals," has "lost most of its suppliers/dealers, and has suffered "actual out of pocket damages of $89,244.01 ... and lost business damages of $400,000.00." (Id., p. 6.)

Plaintiff commenced the instant action in the Superior Court of New Jersey, Law Division, Essex County, on August 28, 2006. Defendants filed a Notice of Removal with this Court on October 10, 2006. Jurisdiction is proper with this Court, pursuant to this Court's diversity jurisdiction under 28 U.S.C. 1332(a). Plaintiff's and Defendant's citizenship is

diverse, and the amount in controversy exceeds $75,000.00. On January 26, 2007, Plaintiff filed an Amended Complaint with this Court, asserting causes of action for strict liability (Count I), failure to warn (Count II), breach of implied and express warranties (Count III), negligence (Count IV), and violations of the New Jersey Consumer Fraud Act (Count V). Plaintiff's Amended Complaint also alleges what appears to be a claim of loss of reputation (Count VI).[3]

On May 16, 2008, OMG moved for summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, seeking a ruling limiting the scope of Petri's permissible remedies because a contract for sale was formed pursuant to express written terms and conditions tendered by OMG.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under FED. R. CIV. P. 56(c), when the moving party demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23; Cascara v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). A factual dispute is genuine if a reasonable jury

---

[3]The Amended Complaint does not make entirely clear the substance of Plaintiff's final cause of action. Plaintiff contends that as a result of Defendant's conduct, "Plaintiff used the mislabeled hazardous material in the manufacturing of its polyurethane product. The mislabeled hazardous material destroyed the Plaintiff's product and as a result Plaintiff suffered not only monetary damages but also damage to its reputation in the industry which continues to this date." (Plaintiff's Amended Complaint, Count VI, ¶ 6.) While this Court cannot definitely discern what Plaintiff's final cause of action is, this Court presumes the allegations form the basis of a claim of loss of reputation.

Nonetheless, Defendant has not sought summary judgment on Plaintiff's claim of loss of reputation. Hence, this Court need not make a determination regarding whether this claim should survive summary judgment. If this Court's supposition as to the nature of Plaintiff's claim is incorrect, Plaintiff must inform this Court and the parties, in writing, as to what cause of action Count VI of the Amended Complaint actually alleges.

could return a verdict for the non-movant, and is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Justofin v. Metro. Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004). This Court views "the facts in the light most favorable to the nonmoving party and draw[s] all inferences in that party's favor." Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (internal citation omitted). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." (emphasis in original) (internal citations omitted)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v.

Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The non-movant cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

### III. DISCUSSION

Plaintiff's Amended Complaint sounds in strict liability, negligence, failure to warn, breach of express and implied warranty, and consumer fraud. OMG contends that it is "entitled to summary judgment as a matter of law limiting the scope of Petri's permissible remedies because a contract for sale was formed pursuant to express written terms and conditions tendered by OMG." (Defendant's Moving Brief in Support of its Motion for Summary Judgment ("Def. Moving Br."), p. 11.). Defendant asserts that the invoice accompanying the offending shipment of SKINO # 2 constitutes a contract for sale[4] between the parties, which clearly and

---

[4]This Court agrees with OMG's assertion that the parties' conduct and course of dealing established the contract relevant to the instant action. The transactions involved in the present matter are governed by Article II of the Uniform Commercial Code, N. J. Stat. Ann. §12A:2-201 (West 1962) et seq. The formation of a contract is addressed by § 2-206, which provides in relevant part:

(1) Unless otherwise unambiguously indicated by the language or circumstances.

    (a) an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances;

    (b) an order or other offer to buy goods for prompt or current

conspicuously limits plaintiff's remedies to those available under the U.C.C., and pursuant to the contract. (Id., 15, 19.) The invoice to which OMG directs this Court's attention states:

> WARRANTIES: SELLER WARRANTS THAT MATERIAL DELIVERED TO THE BUYER WILL MEET OMG SPECIFICATIONS AND STANDARDS OR, IF PREVIOUSLY AGREED UPON, MATERIAL WILL MEET CUSTOMER SPECIFICATIONS OR STANDARDS. SELLER MAKES NO WARRANTY EXPRESS OR IMPLIED THAT THE MATERIAL IS MERCHANTABLE OR THAT IT IS FIT FOR A PARTICULAR PURPOSE. BUYER ASSUMES ALL RISK WHATEVER AS TO THE RESULT OF THE USE OF THE PRODUCTS PURCHASED, WHETHER USED SINGLY OR IN COMBINATION WITH OTHER SUBSTANCES OR IN ANY PROCESS. MATERIAL SOLD AS SUBSTANDARD CONTAINS NO WARRANTIES AND IS SOLD "AS IS".

The invoice further provides:

> LIMITATIONS OF CLAIMS. Defective or non-conforming products shall be replaced by Seller without any additional charge. Buyer's remedies shall be limited solely and exclusively to replacement of defective or non-conforming products, or at the election of Seller, to return the products, and repayment of the price. SELLER SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES.

**A.    Plaintiff's Negligence, Strict Liability, and Failure to Warn Claims**

As a preliminary matter, this Court finds that Defendant is entitled to summary judgment on Plaintiff's claims for strict liability (Count I), failure to warn (Count II), and negligence (Count IV). New Jersey has adopted the economic loss doctrine to limit the scope of product

---

> shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods ....

N.J. Stat. Ann. §12A:2-206

In the instant case, Petri's offer to buy goods was in the form of a purchase order. This offer invited acceptance either by a "promise to ship" or by the "current shipment" of the goods. OMG responded to Petri's request by promptly shipping non-conforming goods. Notwithstanding OMG's failure to ship conforming goods, the conduct of the parties is sufficient to demonstrate the existence of a contract. See N.J. Stat. Ann. §12A:2-206(1)(b), cmt. 4.

liability claims.  See Paramount Aviation Corp. v. Agusta, 288 F.3d 67, 70 (3d Cir. 2002) (citing Spring Motors Distribs., Inc. v. Ford Motor Co., 489 A.2d 660, 663 (N.J. 1985)) ("The Supreme Court of New Jersey held that a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from an immediate seller and a remote supplier in a distributive chain for breach of warranty under the [Uniform Commercial Code], but not in strict liability or negligence.").  There is no dispute that Petri is a commercial buyer and is seeking damages for economic loss resulting from the purchase of defective goods.  Thus, plaintiff is precluded, as a matter of law, from pursuing its tort claims, but may pursue its contract remedies available under the U.C.C.  See Alloway v. General Marine Indus., L.P., 695 A.2d 264, 267-68, 275 (N.J. 1997) ("Generally speaking, tort principles are better suited to resolve claims for personal injuries or damage to other property ... Contract principles more readily respond to claims for economic loss caused by damage to the product itself.").

**B.     Plaintiff's Consumer Fraud Claim**

In Count V of its Amended Complaint, Petri alleges that OMG engaged in "unconscionable commercial conduct," in violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, et. seq., by warranting the merchantability of the tainted SKINO # 2 shipment.  (Am. Compl., Count V ¶ 3-4.)  In New Jersey, "a breach of warranty, or any breach of contract is not per se unfair or unconscionable and a breach of warranty alone does not violate a consumer protection statute."  Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994).  Rather, to succeed on a consumer fraud claim, a plaintiff must demonstrate "substantial aggravating circumstances," such as the existence of bad faith or lack of fair dealing, sufficient to constitute an "unconscionable business practice."  Id.

Plaintiff has failed to put before this Court any facts showing that Defendant acted in bad faith or engaged in unfair dealing during its transaction with Plaintiff. The only evidence before this Court indicates that the SKINO # 2 product shipped to Plaintiff was mistakenly mislabeled. Proof of such a mistake, however, does not constitute a showing of "substantial aggravating circumstances," which constitute an "unconscionable business practice," as is required to succeed on a claim under the New Jersey Consumer Fraud Act. Thus, Defendant is entitled to summary judgment as to Plaintiff's New Jersey Consumer Fraud Act Claim (Count V). There is no genuine issue as to a material fact to preclude ruling in Defendant's favor as a matter of law.

**C.     Plaintiff's Breach of Warranty Claims**

In its motion for summary judgment, OMG seeks only a finding that its liability for breach of implied and express warranties is contractually limited to replacement of the SKINO #2 product, or a refund of the purchase price. Specifically, OMG seeks "summary judgment as a matter of law enforcing the terms of the contract which clearly and unequivocally define the scope of Petri's available remedies in the event of OMG's supply of a non-conforming product." (Def. Moving Br., p. 10.) OMG asserts that the contract clause, entitled "LIMITATIONS OF CLAIMS," insulates it from incurring any liability resulting from the tender of non-conforming products, outside of replacement or refund.

Under the U.C.C., "parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect." N.J. Stat. Ann. §12A:2-719, cmt. 1. Such agreements to allocate risk of loss will be upheld as long as the limitation does not violate public policy. Chemical Bank of New Jersey Nat. Assoc. v. Bailey, 296 N.J. Super. 526-27 (App. Div. 1997).

Section 2-719 provides for contractual limitation of remedies, as follows:

(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

> (a) the agreement may provide for remedies in addition to or in substitution for those provided in this Chapter and may limit or alter the measure of damages recoverable under this Chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

> (b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

N.J. Stat. Ann. § 12A:2-719

Plaintiff contends that the limited remedy available under the parties' contract fails of its essential purpose, because it "deprives [Petri] of the substantial value of their bargain." (Pl. Opp. Br., p. 14.) Defendant argues, in contrast, that there is no limited remedy pursuant to the parties' contract, but rather that Defendant provided Plaintiff with a "minimum adequate remedy."[5] (Defendant's Reply Brief in Support of its Motion for Summary Judgment, p. 10.)

---

[5]Defendant's argument relies on a misreading of the statute. Under New Jersey law, while parties are free to allocate risk of loss by creating limitations of remedies, all contracts must have a minimum adequate remedy. Existence of such an adequate remedy, however, does not insulate a party from challenges to the failure of limited remedies. The minimum adequate remedy only sets a floor, under which parties may not contract away liability. See Kearney & Trecker Corp. v. Master Engraving Co., Inc., 527 A.2d 429, 433-34 (N.J. 1987).

In New Jersey, the body of case law that addresses limitations on remedies largely concerns sellers of machinery, who contractually limit liability to the repair or replacement of non-conforming goods–that is, malfunctioning parts.  See, e.g., General Motors Acceptance Corp. v. Jankowitz, 216 N.J. Super. 313, 329-30 (App. Div. 1987); see also Chatlos Systems, Inc. v. National Cash Register Corp., 635 F.2d 1081, 1085-56 (3d Cir. 1980) (applying New Jersey law); Argo Welded Prods, Inc. v. J. T. Ryerson Steel & Sons, Inc., 528 F. Supp. 583, 593 (E.D. Pa. 1981) (applying and noting the same result under both New Jersey and Pennsylvania law); BOC Group, Inc. v. Chevron Chemical Co., LLC, 359 N.J. Super. 135, 146-48 (App. Div. 2003).

In these types of cases, the answer as to whether a limited remedy "failed of its essential purpose" is easily discerned.  If a seller fails to, or is unable to, replace or repair a defective part, the limited remedy accordingly fails.  However, where a seller has the ability to repair, or is able to replace parts, the remedy is sufficient and exclusive, notwithstanding any incidental or consequential damages suffered by the buyer.  What is noticeably absent from New Jersey jurisprudence are cases, such as the one at bar, which involve damages resulting from the introduction of mislabled chemicals or products into existing manufacturing processes.

While this Court recognizes that the trend in New Jersey is to enforce limitations clauses in contracts for machinery, the process of applying such legal reasoning to facts of the instant case is awkward, at best.  While a mechanical part can be replaced or repaired, and reinserted into a machine, chemicals, once introduced into another substance or chemical process, cannot readily be extracted for easy replacement or repair.

This Court finds legal lessons gleaned from life on the farm to be a more appropriate

11

context in which to analyze this discrete dispute. The law of seeds became a formidable subsection of the law of limited remedies in the latter half of the twentieth century, and continues to sprout in this century. See, e.g., Lutz Farms v. Asgrow Seed Co., 948 F.2d 638, 646 (10th Cir. 1991) (applying Colorado law and upholding district court's determination that a limitation on liability to seed purchase price failed for its essential purpose, where seller sold defective seed, resulting in an unusable harvest and financial ruin for buyer); see also Nomo Agroindustrial Sa De CV v. Enza Zaden North Am., Inc. 492 F. Supp. 2d 1175 (D. Ariz. 2007) (same, applying Arizona law) ("[U]nlike many products (i.e., a television, stereo, etc.) that can repaired or replaced which would actually make the buyer whole and otherwise fulfill the purpose of the contract and related warranties, simply replacing seeds or refunding the price of seeds in the agricultural context is totally inadequate."); Majors v. Kalo Labs., Inc., 407 F. Supp. 20, 22- 23 (M.D. Ala.1975) (finding limitation of remedy clause unconscionable where the purchased product, a soybean inoculant, had a latent defect which could not be detected until the soybean crop had been cultivated, planted and harvested); Dessert Seed Co. v. Drew Farmers Supply, Inc., 454 S.W.2d 307 (Ark. 1970) (applying Arkansas law)[6]; Corneli Seed Co. v. Ferguson, 64 So.2d

---

[6] For example, in Dessert Seed Co. v. Drew Farmers Supply, Inc., 454 S.W.2d 307 (Ark. 1970), six tomato growers brought suit against Drew Farmers Supply, a seed supplier, who sold them incorrectly labeled seed packets. Drew, thereafter, filed a third party complaint against its regular supplier, Service Seed, which interpleaded Dessert Seed, the seed grower. The trial court invalidated limitations clauses in both the Drew-Service Seed and in the Service Seed-Dessert Seed.

On appeal, Service Seed and Dessert Seed both argued the validity of their respective limitations clauses. The Service Seed clause, which appeared, in fine print, on a tag attached to the seed bag, provided:

> Subject to the limitation of liability herein set forth, we warrant that seeds or bulbs sold are as described on the container, within recognized tolerances. Our liability

162 (Fla. 1953) (applying Florida law and finding that a limitation excluding consequential damages was unconscionable in a context of crop deficiency, where a seed defect was latent and not apparent until after harvesting).

Fewer courts have applied similar seed reasoning to chemical products suits, similar to the instant action.  See e.g., Neville Chem. Co. v. Union Carbide Corp., 294 F. Supp. 649, 655, aff'd 422 F.2d 1205 (3d Cir. 1970) (applying Pennsylvania law)[7].  In Neville, the court refused to

---

> on this warranty is limited in amount to the purchase price of the seeds or bulbs. In no way shall we be liable for the crop.

454 S.W.2d at 308.

The Dessert clause, which was printed on the shipping tag accompanying the seed as well as other correspondence between Dessert Seed and Service Seed stated:

> We warrant to the extent of the purchase price that seeds we sell are as described by us on our container within recognized tolerances. Our liability, whether contractual or otherwise, is limited in amount to the purchase price of the seeds under all circumstances and regardless of the nature, cause or extent of the loss. Seeds not accepted under these terms and conditions must be returned at once in original unopened containers and the purchase price will be refunded.

Id. at 310.

The Arkansas Supreme Court upheld the trial court's determination that the Service Seed clause was inconspicuous and failed to form the basis of the bargain, where the purchase transaction was completed via telephone, notwithstanding the inclusion of a warranty tag with shipment.  The decision further upheld the trials court's determination that the Dessert Seed clause was invalid, stating, "[t]o hold that Service Seed is limited to a recovery of the purchase price of the seed in the face of established negligence would be unreasonable, unconscionable, and against sound public policy."  Id. at 311.

---

[7]The Neville decision is particularly useful for comparative purposes in that the "New Jersey and Pennsylvania versions of these [relevant] provisions of the U.C.C. are substantively the same." Otobai, Inc. v. Auto Tell Servs., Inc., 1994 WL 249766, *13 n. 5 (comparing N.J. Stat. Ann. § 12A:2-719(2) & (3) with 13 Pa. Con. Stat. § 2719(b) & (c)).

13

enforce a clause limiting the buyer's remedy to return of the purchase price. The buyer alleged that the exclusion was unconscionable because a defect in resin which the buyer had purchased was not discoverable until the resin had been resold to manufacturers and had been incorporated into finished products. In concluding that the limitation clause failed of its essential purpose, the court reasoned:

> Such a (limited) remedy would be wholly inadequate in the case of a latent defect not discoverable within a reasonable period after receipt of shipment. Like the fifteen day (notice) limitation, it is obviously designed to cover a situation where the defect is discoverable upon receipt of shipment, reasonable inspection and prompt discovery of defects. The parties can be restored by prompt notification to the seller, return of the purchase price, and return of the material.

294 F. Supp. at 655.

One additional common thread uniting the aforementioned cases are courts' holdings that the relevant limitations clauses did not reflect the meeting of the minds of the contracting parties, and thus, did not accurately reflect what the parties assumed they were contracting to. See, e.g., Neville, 294 F. Supp. at 656 (finding disclaimer of liability insufficient where the disclaimer was not "conspicuous"–that is, that it appeared in uniform font size with other contract provisions) ; see also Dessert Seed, 454 S.W.2d. at 310 (finding disclaimer of liability insufficient where the parties had conducted negotiations for eight years via telephone and disclaimer appeared in fine print on a tag attached to the product).[8]

---

[8]This Court is mindful that there exists relevant case law that reaches a different result. See e.g., Bernath v. Potato Svcs. of Minn., 300 F. Supp. 2d 175, 182-83 (D. Me. 2004) (limitation of damages provision within contract for shipment of seed potatoes upheld, where the seller shipped incorrect potato variety, but where provision did not fail of its essential purpose, and where limitation constituted an agreed-upon allocation of loss between experienced parties, and was reasonable under Maine common law).

It is apparent that the foregoing seed cases provide an analogous analytical framework. Plaintiff proffered facts disputing Defendants' contention that the parties agreed that the SKINO # 2 product was defective, in that, the received product was not SKINO #2. Plaintiff has also put forth facts tending to show that the defect was not readily discoverable. The purchased product was incorporated into another product and resold. Petri further contends that replacement of the product or refund of the purchase price would not cover the alleged costs incurred by Petri, stemming from the use of the tainted product. Finally, the purchase order was a verbal order; the invoice containing the limitations clause was not received by Petri until after the order had been accepted and the mislabeled goods had been shipped.

For summary judgment purposes, however, this Court must consider what questions of fact, if any, remain. This Court distills from the case law that the question in this case is whether the limitations clause indicated on the OMG invoice ever became part of OMG's and Petri's sales contract. Petri has proffered sufficient evidence that there was no meeting of the minds as to the inclusion of the limitations clause in the sales contract. Thus, a genuine issue as to a material fact is present in this action, for which resolution by the fact finder(s) is necessary.

## IV. CONCLUSION

For the reasons stated above, the motion of defendant, OSM Americas, Inc., for summary judgment, pursuant to FED. R. CIV. P. 56, is granted in part, and denied in part.

Date: December 29, 2008

        S/Joseph A. Greenaway, Jr.
        JOSEPH A. GREENAWAY, JR., U.S.D.J.